729 So.2d 71 (1999)
STATE of Louisiana
v.
John G. ROWELL.
No. 98-KA-780.
Court of Appeal of Louisiana, Fifth Circuit.
February 10, 1999.
*72 Paul D. Connick, Jr., District Attorney, Ellen S. Fantaci, Terry M. Boudreaux, Caron Morgan, Assistant District Attorneys, Gretna, Louisiana, for plaintiff-appellee.
Sandra C. Jenkins, Louisiana Appellate Project, New Orleans, Louisiana, for defendant-appellant.
Court composed of Judges CHARLES GRISBAUM, Jr., EDWARD A. DUFRESNE, Jr., and SUSAN M. CHEHARDY.
GRISBAUM, Judge.
The defendant, John G. Rowell, appeals his conviction of attempted first degree murder, La. R.S. 14:27:30. We affirm his conviction and remand with instructions.

ASSIGNMENTS OF ERROR
The defendant assigns as error the following, to-wit: "[1] Ineffective assistance of trial counsel at the pre-trial hearing on the motion to suppress the identification [,][and][2] The trial court erred by imposing an illegally lenient sentence." Defendant-appellant's original brief at p. 1.

FACTS AND PROCEDURAL HISTORY
On December 21, 1996, Officer William Sandino was patrolling Industry Road in Kenner, Louisiana, when he saw a man, later identified as the defendant, looking around a parked truck and into a business at that location. The officer turned on his lights and proceeded in the defendant's direction. The defendant began to walk away when he saw the officer. While Officer Sandino radioed headquarters to inform headquarters that he had observed a suspicious subject in the area, a second man appeared from behind an 18 wheeler.
As Officer Sandino approached the two suspects with his spotlights on, he identified himself as a police officer and asked them to stop. The second man immediately turned around with his hands up. As Officer Sandino instructed the defendant to turn around, the defendant turned around and fired a shot at the officer. As the officer fell to the ground and returned two shots, both subjects fled.
On December 25, 1996, Officer Sandino tentatively identified the defendant in a photographic lineup as the man who shot at him. The officer also met with a composite artist, who sketched a composite drawing of the perpetrator based upon Officer Sandino's description. The composite drawing was distributed to officers at headquarters at roll call.
On December 26, 1996, Officer Henry Jaume, who had received a "wanted" flyer of the defendant, was driving through a trailer park in Kenner, Louisiana, when he saw a subject, who matched the description on the flyer and who appeared nervous when he saw the police car. Officer Jaume spoke with the defendant and, with the defendant's consent, brought the defendant to the Jefferson Parish Correctional Center to participate in a lineup.
Officer Sandino went to the Correctional Center that evening. As Officer Sandino walked through the reception area where the defendant was waiting, Officer Sandino spotted the defendant and stated to an accompanying officer, "[g]et me out of here, that's the one!" and "[t]hat's the MF that shot me." A physical line-up was not conducted on that date.
Officer Sandino was shown a second photographic lineup on January 9, 1997, during which he again tentatively identified the defendant. However, Officer Sandino told the *73 investigating officer that he was positive the man he saw at the Correctional Center was the perpetrator. A warrant for arrest was then issued for the defendant.
On April 3, 1997, the defendant was charged with attempted first degree murder, La. R.S. 14:27:30. The defendant pled not guilty at his arraignment. On July 2, 1997, the trial court heard and denied the defendant's motion to suppress the identification. Trial began on September 10, 1997; however, the court, upon a joint motion, declared a mistrial.
Trial was reset and began on November 4, 1997. The jury returned with a verdict of guilty as charged by a vote of 11 to one. On November 12, 1997, the defendant was sentenced to 40 years at hard labor without benefit of probation, parole, or suspension of sentence. The trial court granted defendant's motion for appeal on November 18, 1997.
On February 23, 1998, the State filed a habitual offender bill of information alleging the defendant to be a second felony offender. On July 1, 1998, the trial court adjudicated the defendant as a second felony offender. The trial court vacated the original sentence and imposed an enhanced sentence of 50 years' imprisonment without probation or suspension of sentence.

ASSIGNMENT OF ERROR ONE
The defendant first argues his trial counsel was ineffective at the motion to suppress hearing in failing to elicit information from the victim regarding the length of time, the lighting conditions, and the distance from which the victim viewed the suspect.
A claim of ineffective assistance of counsel is most appropriately addressed through an application for post conviction relief, rather than on direct appeal, so as to afford the parties an evidentiary hearing before the trial court and create an adequate record for review. State v. Pendelton, 96-367 (La.App. 5th Cir. 5/28/97), 696 So.2d 144, writ denied, 97-1714 (La.12/19/97), 706 So.2d 450. However, when the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. Id. at 155-56. The standard to assess a claim of ineffective assistance of counsel is two-pronged where defendant must show that (1) his counsel's performance was deficient, and (2) the deficiency prejudiced him. Id. at 156 (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5th Cir. 4/26/94), 636 So.2d 1069, writs denied, 94-0475 (La. 4/4/94), 637 So.2d 450, 94-1361 (La.11/4/94), 644 So.2d 1055).
Here, the defendant's argument attacks the pre-trial strategy of the trial counsel in focusing upon evidence relating to the identification procedure. A defendant challenging an identification procedure must prove that the identification was suggestive and that there was a substantial likelihood of misidentification as a result of the identification procedure. State v. Every, 96-185 (La. App. 5th Cir. 7/30/96), 678 So.2d 952. Even if the identification procedure is found to be suggestive, this alone does not violate due process for it is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness. Id.
Upon review of the record, we do not find there is sufficient evidence to prove that the identification was suggestive or that there was a substantial likelihood of misidentification. The defendant fails to show how the trial counsel's strategic decision constituted deficient performance. Thus, we conclude there is not sufficient evidence to apply the Strickland standard to defendant's trial counsel. Ergo, we find that post conviction relief is the appropriate remedy to address this issue.

ASSIGNMENT OF ERROR TWO
The defendant finally argues that the trial court erred by imposing the enhanced sentence without specifying that it should be served without benefit of parole. Following his conviction of attempted first degree murder, La. R.S. 14:27:30, the defendant was originally sentenced to serve 40 years at hard labor, without benefit of parole, probation, or suspension of sentence. Upon adjudicating the defendant a second felony offender, the trial court vacated the defendant's original *74 sentence and sentenced the defendant to 50 years at hard labor, without benefit of probation or suspension of sentence. The defendant argues that his enhanced sentence is illegally lenient because it was imposed without denying him eligibility for parole. After a review of the pertinent statutory provisions reflected as follows, we agree.
The underlying substantive offense is attempted first degree murder. First degree murder is punishable as follows: "Whoever commits the crime of first degree murder shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence...." La. R.S. 14:30(C).
Additionally, the statutory sentencing provision for an attempt to commit a crime provides that the attempt shall be punished as follows: "If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence[.]" La. R.S. 14:27(D)(1).
The habitual offender law provides that a second felony offender shall be punished as follows:
If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction[.]
La. R.S. 15:529.1(A)(1)(a).
However, Section G of La. R.S. 15:529.1 also provides "[a]ny sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence."
A review of the original sentencing transcript and minute entry reveals the judge's intent to sentence the defendant to the maximum authorized by statute for attempted first degree murder. Although the transcript of the multiple bill hearing reflects that the trial court sentenced the defendant to 50 years at hard labor and to serve his sentence "without benefit of probation or suspension of sentence[,]" the minute entry shows that sentence is to be served "without benefit of parole, probation, or suspension of sentence."
Noting that a conflict exists, in the final analysis, we look to La. R.S. 14:3, which provides for interpretation of the criminal statutes as follows:
The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.
After all is said and done, although this defendant was sentenced as a habitual offender, the penalty provisions of the underlying offense (by La. R.S. 14:27 and 14:30) are the reference provisions on which the penalty increase is calculated. As stated by the Louisiana Supreme Court in State v. Bruins, 407 So.2d 685 (La. 1981), "It is not a crime to be a habitual offender. The statute increases the sentence for a recidivist. The penalty increase is computed by reference to the sentencing provisions of the underlying offense. Similarly, the conditions imposed on the sentence are those called for in reference statute." Id. at 687.
Ergo, recognizing our jurisprudential guidelines and our Louisiana Supreme Court's analysis, we conclude the defendant's sentence as a second felony offender for attempted first degree murder should have denied him parole eligibility, which it did not.
Thus, we remand this case to correct the defendant's sentence to reflect his parole ineligibility in accordance with La.Code Crim. P. arts. 916(2), 882 and State v. Harris, 93-1098 (La. 1/5/96), 665 So.2d 1164.

ERRORS PATENT REVIEW
The record was reviewed for errors patent according to La.Code Crim. P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir. 1990). The review reveals no errors.
*75 For the reasons assigned, the defendant's conviction is affirmed and the case is remanded with instructions to correct the illegal sentence.
CONVICTION AFFIRMED AND REMANDED WITH INSTRUCTIONS.