743 So.2d 749 (1999)
STATE of Louisiana
v.
Mark TAYLOR (Sentenced As Mark Q. Taylor).
No. 99-KA-385.
Court of Appeal of Louisiana, Fifth Circuit.
August 31, 1999.
*750 Paul D. Connick, Jr., District Attorney, Gretna, Assistant District Attorneys, Terry M. Boudreaux, Thomas Block, for State.
Bruce G. Whittaker, Louisiana Appellate Project, Gretna, Louisiana, for Mark Taylor.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
Mark Taylor appeals his adjudication as a second felony offender and his enhanced sentence of forty-nine and one-half years at hard labor without benefit of probation or suspension of sentence. We affirm.
The habitual offender conviction arose as follows. On January 21, 1997 Mark Taylor was charged with one count of violation of La. R.S. 14:64, armed robbery. He entered a plea of not guilty on February 4, 1997.[1] On July 30 and 31, 1997 *751 Taylor was tried by a 12-member jury, which unanimously found him guilty as charged. After a pre-sentence investigation, on October 3, 1997 he was sentenced to twenty years imprisonment at hard labor without benefit of parole, probation or suspension of sentence.[2] His counsel made an oral motion to reconsider sentence, which was denied.
Immediately thereafter the district attorney filed a habitual offender bill against the defendant pursuant to La. R.S. 15:529.1, alleging that he previously was convicted of violation of La. R.S. 14:94, illegal discharge of a firearm, by guilty plea on April 15, 1996.
On November 20, 1998 the defendant was adjudicated a second felony offender. The court vacated his original sentence and sentenced him to an enhanced sentence of forty-nine and one-half years imprisonment at hard labor without benefit of probation or suspension of sentence. Defense counsel objected to the sentence and filed a motion for appeal. The motion for appeal was granted on November 23, 1998. On December 7, 1998 the defendant filed a pro se motion for appeal, which was signed by the trial judge on December 9, 1998. The defendant also filed a pro se motion to reconsider sentence on January 21, 1999, which was denied on February 12, 1999.

FACTS
With respect to the underlying armed robbery charge, the testimony of the State's witnesses established the following facts. On December 21, 1996, Barbara Burke drove to Eckerd Drugstore on the corner of Barataria Boulevard and Lafitte Larose Highway and pulled into a parking spot in front of the drugstore. Mrs. Burke noticed a young man with a ponytail standing by a pay telephone. As she began walking toward the store's front door, she noticed a second young man walking toward her between several of the other parked cars. On reaching her, the second man pointed a gun at her and told her to give him her keys.
Afraid she was going to be shot, Mrs. Burke handed the second man her keys and ran behind another car. When she looked back toward her car, she saw the second man driving away in it, while the man she had seen standing by the pay phone ran after the car. Mrs. Burke ran inside the Eckerd store and called police, who arrived at the scene shortly thereafter.
Clark Dufrene testified he and his family were in Eckerd's parking lot and heard Mrs. Burke scream. While his wife went to assist Mrs. Burke, Mr. Dufrene drove after the vehicle he saw leaving the parking lot. He noticed a young man begin running from a pay phone out of the parking lot. Dufrene followed and saw him walking with three other men. Shortly after he discovered them in a group with Mrs. Burke's car. He flagged down a police car, leading officers back to the location in which he had seen the men with the car. He later identified the vehicle as the one he had seen backing out of Eckerd's parking lot. He also identified the clothing he had seen on the man running from the pay phone, but he could not identify the stolen vehicle's driver.
Deputy David Burke of the Jefferson Parish Sheriff's Office was dispatched to the area on a report of carjacking. He noticed a vehicle traveling down Mt. Kennedy Street that matched the description of the stolen car (a brown four-door Oldsmobile, license plate CST 363). As his marked policed unit approached, the Oldsmobile made an abrupt turn onto Mt. Rushmore Street. He followed the car, using his lights and siren. It accelerated and pulled into a parking area, where the driver jumped out and ran away. While *752 the vehicle was still in motion, two occupants escaped from the rear passenger seat and fled. Deputy Burke was able to detain two more passengers who attempted to escape after the car stopped. Deputy Burke testified that the defendant was the man he saw jump from the stolen vehicle and run away.
Deputy James Ducote Jr. testified he assisted in the search and that he discovered a man fitting the description of the suspect in the backyard of an abandoned house, carrying his shirt in his hand and sweating profusely on a rather cool day. He confronted the man, who gave his name as Mark Taylor, but upon being patted down Taylor became combative and had to be handcuffed.
When Mrs. Burke went to retrieve her vehicle, she identified one of the detained passengers as the young man she has first seen standing by the telephone booth outside Eckerd's. She did not recognize the second passenger. Mrs. Burke identified the defendant as the man who had pointed a gun at her and demanded her car keys. Mrs. Burke also made an in-court identification of the defendant as the perpetrator.
Detective Joseph Kloiber of the Jefferson Parish Sheriff's Office testified that after the defendant was arrested, he read him his rights and the defendant then voluntarily gave a statement. A recording of the defendant's statement was introduced into evidence and played for the jury. In it the defendant admitted walking up to the victim, pulling out a gun, and asking for her car keys. He admitted that after she threw the keys at him, he drove away in the victim's car. A transcript of the tape was introduced into evidence.
The defendant rested his case without presenting any evidence.
ASSIGNMENT OF ERROR NO. 1
The trial court erred in not ruling on appellant's motion to reconsider sentence and in sentencing appellant under a misapprehension of the law.
The defendant argues that the trial judge erroneously believed he was prohibited from imposing an enhanced sentence that deviated from the statutorily-mandated sentence. The defendant also complains that the trial judge erred in ruling that he did not have jurisdiction to consider the defendant's pro se motion to reconsider his sentence.
In denying defense counsel's oral motion to reconsider the original sentence, the trial judge indicated he would not reconsider the sentence because he knew the State was going to multiple-bill the defendant. The trial judge correctly noted that if the State proved the allegations of the multiple bill, the defendant's original sentence would be vacated and an enhanced sentence would be imposed. The trial judge agreed, however, that if the State was unable to prove the habitual offender allegations he would reconsider the defendant's original twenty-year sentence.[3]
On November 20, 1998, the trial judge found that the State had proven that the defendant was a second felony offender. La. R.S. 14:64 provides that the sentence for the crime of armed robbery is not less than five and not more than ninety-nine years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. La. R.S. 15:529.1 provides that second felony offenders who are convicted of crimes that require them to serve any period of imprisonment less than life imprisonment shall be sentenced to serve no less than one-half the longest term provided by the underlying statute and no greater than twice the longest term provided by the underlying statute. Therefore, the defendant faced an enhanced sentence *753 of no less than forty-nine and one-half years and no greater than one hundred and ninety-eight years imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
The imposition of a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Medious, 98-419 (La.App. 5 Cir. 11/25/98), 722 So.2d 1086, writ denied, 98-3201 (La.4/23/99), 742 So.2d 876.
If, in [a habitual offender] case when defendant is ultimately sentenced, the trial judge were to find that the punishment mandated by R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime", he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive.
State v. Dorthey, supra, at 1280-1281.
In the present case, just before the trial judge vacated the defendant's original sentence and imposed an enhanced sentence, the defendant's trial attorney argued, "I realize that there's certain minimums that the Court has to consider in sentencing, but that is a very serious sentence. I'd like to note that the Court, I believe, does have discretion to go below the minimum of the recommended statute if it feels there's some extenuating or unusual circumstances."
Despite that argument, the trial judge vacated the defendant's original sentence. Noting that the defendant was only 17 when he pleaded to the first felony charge and that he was 18 at the time of the second felony sentencing, the court sentenced the defendant as follows:
But, the statute has a mandatory language in it. The Court can't deviate from the language. So, the Court is going to sentence you to forty-nine and a half years in the custody of the Department of Corrections without benefit of probation or suspension of sentence. And give you credit for time served.
Defense counsel noted an objection.
Further, at a later hearing on the defendant's pro se motion to reconsider sentence, the trial judge stated,
Mr. Taylor, I believe your case is underis on appeal right now. When your case is on appeal, I don't have jurisdiction to do anything with your case. I can't do anything at all.
But, I want to tell you that I've gotten a lot of letters from friends of yours and family members asking me to do something to help you. But the problem is, the sentence I gave you is the minimum I can give you under law. I can't-there's nothing that I could do if I could hear this motion ... because the law specifies what I have to give you as the minimum or maximum. And I've given you the minimum, so I really can't do anything with it.
The defendant asserts the record establishes that the trial judge wished at least to consider a sentence below the minimum established by law, but mistakenly believed he had no choice. Further, the defendant argues, the trial judge erroneously believed he had no jurisdiction over the motion to reconsider sentence during the appeal.
First, as to whether the trial court erred in refusing to rule on the pro se motion to reconsider the enhanced sentence, defendant's appellate brief correctly points out that the trial court retains jurisdiction during an appeal "to correct an illegal sentence or take other appropriate action pursuant to a properly made or filed motion to reconsider sentence." La.C.Cr.P. art. 916(3). However, a motion to reconsider sentence must be made or filed within 30 days after imposition of sentence. La. C.Cr.P. art. 881.1(A)(1). Here, the enhanced *754 sentence was imposed on November 20, 1998, but the pro se motion to reconsider sentence was not filed until January 21, 1999. Thus, as pointed out in the State's brief, the trial judge was correct in concluding he had no jurisdiction to consider the motion, although he erred in stating the ground which divested his jurisdiction.
We find no merit to defendant's claim that he is entitled to have his sentence vacated and his case remanded for resentencing due to the trial court's misunderstanding of his sentencing powers in this case. The judge's explanation to the defendant was limited to stating that he was bound by the law's mandatory minimum sentencing provision. The trial judge, who had the benefit of a pre-sentence investigation as well as the evidence presented at the multiple offender hearing, was aware of the defendant's previous conviction for illegal use of a firearm. The judge did not indicate he felt the mandatory minimum sentence in this case was constitutionally excessive as provided in the Dorthey case.
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional.... A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut the presumption of constitutionality.
State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, at 676.
Further, the defendant presented no evidence during the habitual offender sentencing hearing to rebut the presumption of constitutionality.
[T]o rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
[Citation omitted.]
State v. Johnson, supra, at 676.
Accordingly, we find no error in the trial court's refusal to reconsider the sentence or to deviate from the mandatory minimum enhanced sentence.
ASSIGNMENT OF ERROR NO. 2 (ERRORS PATENT)
Also assigned as error are any and all errors patent on the face of the record.
Our review of the record discloses several patent errors. First, the trial judge imposed the defendant's enhanced sentence without requiring that it be served without benefit of parole, as required by La. R.S. 14:64(B).
Where a defendant is sentenced as a habitual offender, "[t]he penalty increase is computed by reference to the sentencing provisions of the underlying offense. Similarly, the conditions imposed on the sentence are those called for in the reference statute." State v. Bruins, 407 So.2d 685, 687 (La.1981); State v. Rowell, 98-780 (La. App. 5 Cir. 2/10/99), 729 So.2d 71, 74.
However, this Court generally will not amend or set aside an illegally lenient sentence on our own motion when the defendant has appealed and the prosecutor has not sought review of the sentence. State v. Bradford, 95-929, p. 5 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, 1111. The State did not seek review of the illegally lenient sentence in this case and, accordingly, we shall not alter it.
Another patent error is that the trial judge failed to properly advise the defendant of the prescriptive period for post-conviction relief as mandated by La. C.Cr.P. art. 930.8(C). Following imposition of the enhanced sentence, the trial judge told the defendant, "You have the *755 right, three years from today, to file post conviction relief applications." In fact, Article 930.8(C) states the time limit runs "three years after the judgment of conviction and sentence has become final," subject to exceptions set forth in the article.
Accordingly, the trial court is directed to inform defendant of the provisions of La. C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. See State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289, 1291.
For the foregoing reasons, the sentence is affirmed and the case is remanded to the trial court for further action consistent with this opinion.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] Jason D. Taylor was charged in the same bill with one count of armed robbery, but on July 29, 1997 the cases were severed for trial. On August 29, 1997 the bill of information was amended to charge Jason Taylor with one count of violation of La. R.S. 14:25:64, accessory after the fact to armed robbery.
[2] The record reflects that the defendant was sentenced as Mark Q. Taylor. Other documents in the record, however, indicate that his given name is Markquinn Taylor. The bill of information and most of the court documents refer to him as Mark Taylor.
[3] The record does not reflect that any written motion to reconsider the original sentence was ever filed. Despite an April 24, 1998 minute entry indicating that the oral motion to reconsider sentence was set for May 22, 1998, in fact the court had already denied that motion on October 3, 1997.