788 So.2d 596 (2001)
STATE of Louisiana
v.
Cedrick WASHINGTON.
No. 00-KA-1312.
Court of Appeal of Louisiana, Fifth Circuit.
May 16, 2001.
*598 J. Rodney Baum, Louisiana Appellate Project, Baton Rouge, LA, Attorney for Appellant Cedrick Washington.
Cedrick Washington, Angola, LA, Defendant/Appellant in Proper Person.
Paul D. Connick, Jr., District Attorney, Thomas J. ButlerCounsel of Record on Appeal, Terry M. BoudreauxAppellate Counsel, Ron AustinTrial Counsel, Assistant District Attorneys, Gretna, LA, Attorneys for Appellee State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
*599 CANNELLA, Judge.
Defendant, Cedrick Washington, appeals from his conviction of armed robbery and his sentence, as a second felony offender, to 75 years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence.[1] For the reasons which follow, we affirm the conviction and enhanced sentence.
At approximately 7:30 p.m. on November 17, 1999, Sandra Sumlin (Sumlin) was working at the Subway Sandwich Shop (Subway) on Loyola Avenue in Kenner. Sumlin was cleaning the store and stocking bread when she noticed a man in front of the Players Sports Bar (Players), which is across the parking lot from Subway. The man was pacing up and down the sidewalk and walking in and out of the bar. He then squatted down, looked at the store and then looked around, as if to see if anyone was looking. The man, later identified as the Defendant, entered the store where Sumlin was working and jumped over the counter. Sumlin attempted to walk out of the door. However, the Defendant had a gun and ordered her to get back in the store. He demanded money and told her to put the money in a white plastic bag that he had. The Defendant pointed the gun at her and repeatedly told her to hurry up. Sumlin estimated that she put in the white plastic bag $180, consisting of $10, $5 and $1 bills and coins including quarters, nickels and pennies. The Defendant then put a towel or shirt over his head and ran out of the store. The entire incident lasted approximately ten minutes.
After the Defendant left, Sumlin called the police. Upon their arrival, she described the perpetrator as wearing a white t-shirt, dark denim black jeans and tennis shoes. The police gathered evidence including a videotape from the Subway's surveillance camera and a videotape from the Players' outside surveillance camera. The police reviewed the videotapes and interviewed a person seen on the Players' videotape which led them to consider the Defendant as a suspect. Fingerprints were taken from the scene, but no matches were made.
Later that night, at approximately 9:30 p.m., the police went to the Defendant's home where they found him sitting on the living room floor wearing a yellow t-shirt and blue jogging pants. The Defendant's mother consented to a search of the home, during which the police seized a gym bag with coins and coin paper wrappers similar to the ones used at Subway. The Defendant was not arrested at that time.
The next day, the police showed a photographic lineup to Sumlin, who identified the Defendant as the person who robbed her the previous night. The Defendant was then arrested pursuant to an arrest warrant.
On January 21, 2000 the Defendant was charged in a bill of information with armed robbery in violation of La. R.S. 14:64.[2] After pleading not guilty, the Defendant filed motions to suppress his identification *600 by photographic lineup and video surveillance, his confession, and evidence seized during a search of his residence. These motions were denied by the trial court after a hearing on March 14, 2000.
Following a two-day trial on May 3 and 4, 2000, the Defendant was unanimously found guilty as charged by a 12-person jury. On May 26, 2000, the Defendant's Motion for New Trial was denied and he was sentenced to 75 years imprisonment at hard labor. The Sate thereafter filed a habitual offender bill of information against the Defendant. Following a hearing, the Defendant was found to be a second felony offender. His original sentence was vacated and he was re-sentenced to 75 years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. It is from this conviction and sentence that Defendant appeals. On appeal, defense counsel assigns five errors and Defendant filed a pro se brief assigning another four errors.[3]

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, defense counsel argues that there was insufficient evidence to support a conviction of armed robbery. More particularly, Defendant asserts that there was insufficient evidence to prove that he possessed a dangerous weapon during the robbery and, thus, his conviction for armed robbery must be reversed. The Defendant points out that Sumlin was the only witness who testified that he had a gun. He maintains that she was unable to identify the type of gun allegedly used and did not even know if it was real or plastic. He contends that Sumlin's emotional state was such that she could have been mistaken about the presence of a gun. Furthermore, he argues that the surveillance tape that captured the robbery did not show him with a gun, and no weapon was found in his home.
The constitutional standard of review for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The Defendant was convicted of armed robbery, which is defined in La. R.S. 14:64(A) as:
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
Thus, the State was required to prove: (1) a taking, (2) of anything of value, (3) from the person or in the immediate control of another, (4) by the use of force or intimidation, (5) while armed with a dangerous weapon. State v. Wickem, 99-1261 (La. App. 5th Cir.4/12/00), 759 So.2d 961. The Defendant only complains that the State failed to prove the last element of the crime, that he was armed with a dangerous weapon.
The term dangerous weapon "includes any gas, liquid or other substance or instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm." La. R.S. 14:2(3). An instrumentality may be considered *601 a dangerous weapon not only because of the inherent danger it possesses, but because it is used in a manner likely to cause death or great bodily harm. State v. Cotton, 94-384 (La.App. 5th Cir.11/16/94), 646 So.2d 1144. The actual production of a weapon at trial is not necessary in an armed robbery prosecution "where the state's witnesses can establish, through their observations at the crime scene, all the elements of the charge beyond a reasonable doubt, including the existence and use of a dangerous weapon." Id., at 1146.
Sumlin testified that the Defendant had a gun and pointed it at her while he demanded money. She stated several times that the Defendant put the gun in her face. She described the gun as silver with a black handle, but was unable to identify the kind of gun. On cross-examination, defense counsel brought up Sumlin's prior testimony that she was not sure whether the gun was real or plastic. No gun was found at the Defendant's residence and no gun was ever introduced into evidence.
The Defendant argues that Sumlin did not even know if the gun was real or plastic. However, this distinction is immaterial. A toy gun has been held to be a dangerous weapon for purposes of an armed robbery conviction if the jury finds that "the interaction between the offender and the victim created a highly charged atmosphere whereby there was a danger of serious bodily harm resulting from the victim's fear for his life." State v. Green, 409 So.2d 563 (La.1982); State v. Cittadino, 628 So.2d 251, 255 (La.App. 5th Cir. 1993); State v. Williams, 479 So.2d 605 (La.App. 1st Cir.1985).
Sumlin testified that she was very afraid and frightened when the Defendant pointed the gun at her and repeatedly told her to hurry up. Clearly, the Defendant created an atmosphere of intimidation prompting her to reasonably react with fear for her life. Based on the above, we find that the evidence clearly supports the Defendant's armed robbery conviction. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error defense counsel argues that the trial court erred by allowing the State to introduce testimony and evidence that the Defendant refused to make a statement to law enforcement authorities.
This Court, in State v. Troulliet, 94-183 (La.App. 5th Cir.9/14/94), 643 So.2d 1267, has explained the limits on references to a defendant's post-arrest silence as follows:
The United States Supreme Court has held that, because an accused's post-arrest silence is "insolubly ambiguous" and a jury is apt to draw inappropriate inferences from the fact that a defendant chose to remain silent, "the use for impeachment purposes of petitioner's silence at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." Doyle v. Ohio, 426 U.S. 610, 617 and 619, 96 S.Ct. 2240, 2244 and 2245, 49 L.Ed.2d 91 (1976). However, a brief reference to post-Miranda silence does not mandate a mistrial or reversal where the trial as a whole was fairly conducted, the proof of guilt is strong, and the state made no use of the silence for impeachment. State v. Mays, 612 So.2d 1040 (La.App. 2nd Cir. 1993), writ denied, 619 So.2d 576 (La. 1993).
Thus, the issue in this case is whether the testimony and evidence regarding the Defendant's refusal to waive his right to remain silent following his arrest was an improper reference to the exercise of his constitutional privilege against self-incrimination *602 which mandates reversal of his conviction.
When the Defendant was arrested, he was advised of his Miranda rights and an Advice of Rights form was filled-out and signed by him. The form indicated that he had been read his rights, that he understood his rights and that he did not wish to waive his rights. The Defendant maintains the trial court erred in allowing the executed Advice of Rights form into evidence because the form, in effect, commented on his choice to exercise his right to remain silent.
The State points out that defense counsel failed to state the ground of his objection at trial and, therefore, the matter is not properly preserved for appeal. Moreover, the trial as a whole was fairly conducted. The comment and evidence about the Defendant not making a statement was made peripherally in the context of a rendition of the sequence of events by the officer and no emphasis was placed on the Defendant's silence by the prosecutor.
Whether a trial court objection was sufficient to preserve the issue for appellate review was recently considered by the Supreme Court in State v. Richards, 99-67 (La.9/17/99), 750 So.2d 940. In Richards, the Supreme Court refused to review an argument concerning prosecutorial reference to defendant's pre-arrest silence because of a failure to provide grounds for the objection at trial. Citing longstanding jurisprudence, the supreme court stated "an objection stating no basis presents nothing for this court to review." Id., at 942.
In the present case, the Advice of Rights form was introduced into evidence at the conclusion of Detective Michael Cunningham's testimony. When the trial court asked if there were any objections to S-20, a consent to search form, and S-21, the Advice of Rights form, defense counsel responded, "For record purposes, I would just lodge an objection for record purposes only, Judge." Furthermore, defense counsel did not object to that portion of Detective Cunningham's testimony wherein he refers to the Advice of Rights form. Based on the foregoing, we find that defense counsel's general objection to the admission of the Advice of Rights form for "record purposes only" does not provide a basis for review.
Moreover, we find no error in the admission of the testimony and rights form within the context of it's admission in this case.
In State v. Mosley, 390 So.2d 1302 (La. 1980), the prosecutor asked two police officers testifying for the state if the defendant had been advised of his constitutional rights at the time of his arrest. While the Louisiana Supreme Court disapproved of the prosecutor's conduct, it found that "oblique and obscure reference to the defendant's post-arrest silence" did not constitute reversible error. The Supreme Court noted that the prosecutorial examination did not stress the right to remain silent or attempt to elicit testimony regarding defendant's failure to respond to police questioning.
This Court followed the reasoning and decision in Mosley in State v. Troulliet, 94-183 (La.App. 5th Cir.9/14/94), 643 So.2d 1267. In Troulliet, which is factually similar to the instant case, the detective was allowed to testify that, after arresting the defendant, he advised him of his Miranda rights, gave him a copy of a standard Rights of Arrestee form, and allowed him to read it. The detective then testified that the defendant refused to waive his rights. The prosecutor did not pursue that line of questioning and moved to an unrelated topic. This court found, relying on Mosley, that any error in the reference *603 to defendant's silence was harmless. The court noted that the prosecutor did not pose a specific question regarding the defendant's post-arrest silence, but rather inquired about the defendant's arrest and advice of rights. In addition, the prosecutor did not stress or emphasize the defendant's exercise of his right to remain silent. This court concluded that "the trial as a whole was conducted fairly, there was overwhelming evidence of defendant's guilt and the state made no use of the silence for impeachment purposes." Troulliet, id, at 1269.
In the present case, the only reference made to the Defendant's exercise of his right to remain silent was during Detective Cunningham's testimony. After establishing that the Defendant had been arrested, the following exchange occurred:
Prosecutor: Did you read himI'm sorry, one last thing. Did you read him his rights?
Witness: Correct. After we transported him to the Kenner Police Station, at that point, we read him his rights, which he did not wish to waive.
Prosecutor: I'm going to show you what the State is marking as State's Exhibit Twenty-One. I'm going to ask you can you identify it for the record, please.
Witness: This is the Advice of Rights Form that wethe Advice of Rights we read to Cedrick Washington after he was arrested.
The prosecutor then questioned Detective Cunningham regarding an unrelated topic.
We find this case to be factually indistinguishable from State v. Troulliet. The prosecutor did not specifically ask about the Defendant's post-arrest silence, but rather asked about the Defendant's arrest and whether he was advised of his rights. Furthermore, the prosecutor did not pursue the issue of the Defendant's post-arrest silence, other than to have the witness identify the Advice of Rights form. The State did not use the Defendant's silence for impeachment purposes.
Rather, we find that the trial was conducted fairly and proof of the Defendant's guilt was strong. He was caught on surveillance tape committing the robbery. Coins and coin paper wrappers, similar to those found at Subway, were found at the Defendant's residence within two hours of the robbery. Also, the victim positively identified the Defendant as the person who committed the armed robbery.
Considering the above, we find that the brief indirect reference to the Defendant's post-arrest silence without a specific objection does not present reversible error. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment of error defense counsel argues that the trial court erred in failing to observe the mandatory 24-hour delay between the denial of a motion for new trial and sentencing. He argues that there was no express waiver of the delay and, therefore, the matter should be remanded for re-sentencing.
The record does not support Defendant's argument. At the conclusion of the hearing on defendant's motion for new trial, the following exchange occurred:
Court: For all those reasons, I'm going to deny the Motion for New Trial.
Defense Counsel: Note my objection, Your Honor.
Court: Ready for sentencing?
Defense Counsel: Yes, Your Honor.
La.C.Cr.P. art. 873 provides in pertinent part:
If a motion for a new trial ... is filed, sentence shall not be imposed until at least twenty-four hours after the motion *604 is overruled. If the defendant expressly waives a delay provided for in this article... sentence may be imposed immediately.
This Court has determined that defense counsel's affirmative response to a question by the trial judge as to whether the defendant was ready for sentencing constituted a waiver of the delay mandated in La.C.Cr.P. art. 873. State v. George, 570 So.2d 46 (La.App. 5th Cir.1990).
Also, in State v. Biglane, 99-111 (La. App. 5th Cir.5/19/99), 738 So.2d 630, this Court found that the Defendant waived the 24-hour delay mandated in La.C.Cr.P. art. 873 when defense counsel announced in open court, after the denial of defendant's motions for new trial and post-conviction judgment of acquittal, that the Defendant was ready for sentencing.
Likewise, in the present case, defense counsel stated on the record after the denial of the Defendant's motion for new trial that the Defendant was ready for sentencing. This constituted a waiver by the Defendant of the 24-hour delay.
Furthermore, this issue is moot because the sentence imposed without delay was vacated pursuant to the imposition of an enhanced sentence following the habitual offender proceedings. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER FOUR
By this assignment of error defense counsel argues that the Defendant's sentence is unconstitutionally excessive. He asserts that the facts of his armed robbery do not warrant a near-maximum sentence of 75 years imprisonment at hard labor. In addition, the Defendant argues that the trial court failed to comply with La. C.Cr.P. art. 894.1 in that it failed to articulate reasons for his sentence and failed to consider mitigating circumstances before imposing the sentence. As such, the Defendant argues that the sentence should be vacated and the matter remanded for re-sentencing.
The State argues, to the contrary, that the sentence was not excessive, that the trial judge did give reasons for the sentence which he imposed, and the record provides ample justification for the imposed sentence.
We find that this issue is moot because this sentence was vacated and the Defendant was re-sentenced as a second felony offender following the habitual offender proceedings. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FIVE
By this assignment of error, defense counsel argues that the State, in the habitual offender proceedings, failed to meet its burden of proving that the guilty plea conviction offered to establish that the Defendant was a second felony offender was constitutionally obtained. More particularly, defense counsel argues that the bargain upon which the guilty plea was based was not kept by the State. The guilty plea was based on the bargain that, if the Defendant pled guilty to one count in the two count bill of information, the second count would be dismissed. Defense counsel contends that the exhibits filed by the State did not establish that the State dismissed the second count in the bill of information. Defense counsel admits that the trial court minutes reflect a dismissal of the second count, but not the transcript of the guilty pleas.
The State argues that it is the Defendant's burden to prove that the plea bargain was not kept and not the state's to prove that it was honored.
Our review of the record reveals that there is no merit to the defense argument *605 because, at the bottom of page two and the top of page three of the guilty plea transcript, the district attorney states that as part of the plea bargain the second count in the bill of information is being dismissed coincident with the plea. This oral dismissal in open court, entered on the minutes of the trial court, constitutes a dismissal of count two of the bill of information pursuant to the plea bargain agreement. La C.Cr.P. art. 691. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER ONE (PRO SE)
By this assignment of error, the Defendant appears to raise three issues. First, he contends that his arrest was illegal because it was made without an arrest warrant. Second, he contends that his identification from a photographic lineup should have been suppressed as the fruit of a poisonous tree. The Defendant argues that the photographic lineup was composed as a result of an illegal arrest. And, third, he argues that he had ineffective trial counsel due to the failure of his counsel to object to testimony that the Defendant refused to give a statement at the time of his arrest.[4]
Detective Cunningham testified that he obtained an arrest warrant for the Defendant two days after the armed robbery and arrested him pursuant thereto. There is no evidence in the record to the contrary. The photograph of the Defendant was taken following his lawful arrest. Thus, we find no record support for either of the Defendant's first two issues.
On his third issue, as discussed in assignment of error number two above, we considered and found no trial error in the trial court's admission into evidence of the Waiver of Rights Form signed by the Defendant and the officer's testimony concerning the form. Therefore, any arguments concerning counsel's ineffectiveness for his failure to object lacks merit. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER TWO (PRO SE)
By this assignment of error the Defendant appears to be arguing that he had ineffective assistance of counsel because his trial counsel failed to properly question the witnesses regarding the identification process. The Defendant seems to argue that the State failed to negate the probability of misidentification.
In order to suppress an identification, a defendant must prove that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 932, cert. denied, 99-8224 (U.S.La.5/15/00), 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800, 68 USLW 3711; State v. Biglane, 99-111 (La. App. 5th Cir.5/19/99), 738 So.2d 630, 634. A photographic line-up is considered suggestive if the photographs display the defendant in such a manner that the witness's attention is unduly focused on the defendant. A line-up is also suggestive if there is not a sufficient resemblance of characteristics and features of the persons in the line-up. Id. Strict identity of physical *606 characteristics among the persons in the photographic lineup is not required. All that is required is a sufficient resemblance to reasonably test the identification. This determination is made by examining articulable features of the pictures such as height, weight, build, hair color, length and texture, facial hair, skin color and complexion, and the shape and size of the nose, eyes and lips. Id.
Here, the photographic line-up consisted of six photographs. The physical characteristics of each person in the line-up appear sufficiently matched to reasonably test each identification. Sumlin had described the perpetrator as a black male approximately 210 pounds and all men in the photographic lineup are heavy set with the same physical features. Thus, we find that the photographic lineup was not suggestive.
Even if the identification could be considered suggestive, it is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. State v. Thibodeaux, supra. In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court set forth five factors to consider in determining if an identification is reliable: 1) the opportunity of the witness to view the criminal at the time of the crime, 2) the witness's degree of attention, 3) the accuracy of the witness's prior description of the criminal, 4) the level of certainty demonstrated at the confrontation, and 5) the length of time between the crime and the confrontation.
In applying the Manson factors to the facts of the present case, we find no substantial likelihood of misidentification. Sumlin testified that she clearly saw the Defendant's face, which was not covered, during the robbery. She further stated that she noticed his eyes were bloodshot and red. She described the Defendant as weighing 210 pounds and wearing a white t-shirt, black denim jeans and tennis shoes. She also described the Defendant's actions while he was in front of Players. All of Sumlin's observations of the Defendant were corroborated by the videotape. Furthermore, when confronted with the photographic lineup the day after the armed robbery, she did not hesitate in identifying the Defendant as the perpetrator. Thus, we do not find that there was by the victim a substantial likelihood of misidentification of the Defendant as the perpetrator of the armed robbery.
In State v. Rowell, 98-780 (La. App. 5th Cir.2/10/99), 729 So.2d 71, the defendant argued that his trial counsel was ineffective in failing to elicit information from the victim during a motion to suppress regarding the identification process. In particular, he complained that his counsel failed to inquire into the length of time, the lighting conditions, and the distance from which the victim viewed the suspect. This court concluded that there was not sufficient evidence to prove that the identification of the defendant was suggestive or that there was a substantial likelihood of misidentification. This court further noted the defendant failed to show how the trial counsel's strategic decision constituted deficient performance. This court ultimately determined there was not sufficient evidence to apply the Strickland standard for ineffective assistance of counsel to the Defendant's trial counsel performance and concluded that post conviction relief was the appropriate remedy to address the issue.[5]
*607 Likewise, in this case, there is nothing to prove that the photo line-up was suggestive or that there was a reasonable probability of misidentification. However, the Defendant's trial counsel did question the victim regarding the identification process. In particular, defense counsel elicited the lack of detail with which the victim described the Defendant. Specifically, defense counsel was able to elicit at trial that the victim did not notice if the Defendant had any missing teeth, scars or facial hair. In response to cross-examination at trial, the victim admitted that she was not focusing on the Defendant.
Based on the above, we find that the record does not reveal that the Defendant's trial counsel was deficient in his questioning of witnesses concerning the identification process. However, as in State v. Rowell, supra, this issue, to the extent that Defendant has an argument that goes beyond the appellate record, must be addressed in post-conviction relief proceedings to afford the Defendant an evidentiary hearing on whether his trial counsel was deficient in his trial strategy regarding the identification process. This assignment of error lacks merits.

ASSIGNMENT OF ERROR NUMBER THREE (PRO SE)
By this assignment of error the Defendant argues that he had ineffective assistance of counsel because his trial counsel failed to subpoena a witness, Michael Cook (Cook), that the police had interviewed on the night of the armed robbery and who allegedly pointed out which direction the perpetrator had run when exiting the Subway.
During the hearing on the motion to suppress identification, there was testimony regarding a witness, Cook, who was seen talking to Defendant on the Players' videotape. The police interviewed Cook who could not remember the Defendant's name, but gave the police the Defendant's address. The defense did not call the witness at trial.
The election to call or not to call a particular witness is a matter of trial strategy and is not per se evidence of ineffective assistance. State v. Dixon, 25,671 (La.App. 2nd Cir.1/19/94), 631 So.2d 94.
Ineffectiveness of counsel, relating to trial strategy, cannot be determined by review of the record on appeal. Such a claim must be asserted by application for post-conviction relief where the issue can be fleshed out through an evidentiary hearing, if necessary, to determine, among other things, the defense strategy and whether the Defendant was himself aware of the strategy and acquiesced in it. This assignment of error lacks merits.

ASSIGNMENT OF ERROR NUMBER FOUR (PRO SE)
By this assignment of error Defendant argues that the trial court failed to properly instruct the jury on reasonable doubt, as defined in La.C.Cr.P. art. 804, and that his trial counsel was ineffective for failing to object to the inadequate instruction. The Defendant asserts that the trial court failed to instruct the jury that reasonable doubt can arise out of the lack of evidence.
La.C.Cr.P. art. 804, in pertinent part, requires that the jury be charged with the following:
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case.
*608 The written copy of the jury charges that were read to the jury reveals that the jury was in fact instructed that reasonable doubt can arise out of the lack of evidence. The pertinent charge reads:
The burden is upon the State to prove the defendant's guilty beyond a reasonable doubt. In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence. If you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty. (Emphasis added).
This charge almost identically tracts the language of La.C.Cr.P. art. 804(A)(2). Therefore, we find that the trial court properly charged the jury regarding that reasonable doubt can arise out of the lack of evidence as well as the evidence presented. This assignment of error lacks merits.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5th Cir.1990). The review reveals no patent errors.
Accordingly, for the reasons stated above, we affirm the conviction of the Defendant on the charge of armed robbery and his enhanced sentence, as a second felony offender, to 75 years imprisonment at hard labor, without benefit of parole, probation or suspension of sentence.
AFFIRMED.
NOTES
[1] The Defendant moved for an appeal from his conviction and original sentence. Thereafter, the State filed a habitual offender bill of information and the Defendant was found to be a second felony offender, his original sentence was vacated and an enhance sentence of 75 years imprisonment at hard labor was imposed. Defendant orally moved for an appeal from the habitual offender proceedings. This Court ordered the record supplemented with the transcript from these proceedings and allowed time for the filing of supplemental briefs.
[2] The Defendant was charged with two counts of armed robbery occurring on November 16 and 17, 1999. This appeal relates only to count one which occurred on November 17, 1999.
[3] The Defendant filed a motion requesting a copy of the record pertaining to the multiple bill proceeding. In an Order signed by this Court on March 14, 2001, Defendant was granted a copy of the record and was given 15 days or until March 29, 2001, to supplement his previously filed pro se brief. The Defendant has not filed a supplemental brief as of the date of rendition of this opinion.
[4] A claim for ineffective assistance of counsel is most appropriately addressed through post-conviction relief rather than direct appeal, so as to afford the parties an evidentiary hearing before the trial court and create an adequate record for review. State v. McIntyre, 97-876 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753. However, where the record contains sufficient evidence to decide the issue and it is raised by an assignment of error, it may be addressed in the interest of judicial economy. Id.
[5] The Strickland standard for ineffective assistance of counsel requires the defendant to show that (1) his attorney's performance was deficient, and (2) he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).