PER CURIAM.[1]
liThe state charged defendant by bill of information with armed robbery in violation of La.R.S. 14:64, and with possession of a firearm by a convicted felon, La.R.S. 14:95.1. Defendant waived a jury and following a bench trial, the court found him guilty as charged on both counts, after expressing its opinion that while it did not believe much of the testimony offered by the victim of the armed robbery, it believed even less about what defendant had *769 to say in his own testimony. The court sentenced defendant on each count to 10 years imprisonment at hard labor without parole, probation, or suspension of sentence. The state thereafter filed an habitual offender bill charging defendant as a fourth or subsequent felony offender. The trial court adjudicated defendant as a fourth offender, vacated the 10-year sentence on the armed robbery count, and resentenced him to 99 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On appeal, in a split panel decision, the Third Circuit affirmed defendant’s conviction for possession of a | ¿firearm by a convicted felon but reversed his conviction for armed robbery on grounds that the state had “failed to prove beyond a reasonable doubt the element of taking,” required by La. R.S. 14:64. State v. Jackson, 09-0045, p. 9 (La.App. 3rd Cir.10/7/09), 19 So.Sd 631, 637 (Amy, J., dissenting). We granted the state’s application to review that decision and reverse with respect to defendant’s conviction for armed robbery because, for all of the trial court’s misgivings about the credibility of both the victim and defendant, we agree with Judge Amy that “the [police] officers’ testimony regarding the reporting of the event coupled with the victim’s testimony supports the conviction under the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard.” Jackson, 09-0045, p. 1 (Amy, J., dissenting).
The evidence at trial established that on the afternoon of November 18, 2005, Alexandria police officers Danny Davis and Keith Mouliere responded to the report of an armed robbery occurring at the Crown Hotel located on McArthur Drive in Alexandria. The hotel had become an enclave for evacuees from New Orleans following Hurricane Katrina. Defendant and Kenneth Williams were among the evacuees and had rented separate rooms at the hotel. They knew each other only in passing and from one occasion on which defendant, a licensed barber, had cut Williams’s hair, leading to an unpaid debt of some $10 or less. The officers approached Room 511 of the hotel and defendant met them at the door. Before the officers could give him his Miranda rights, defendant volunteered, “Man, that guy owed me nine dollars,” referring to the prior haircut, and explained that “the reason he had taken the money from the victim was because that the victim had owed him money for a haircut.” Officer Davis recalled that defendant appeared “very communicative ... polite, actually.” After receiving his Miranda rights, defendant signed a consent form authorizing the search of his hotel room. When the officers [swent inside, Davis observed a small barbeque pit in the room and pulled off its hood. He found a box of .32 caliber shells lying on the grill. At that point, defendant, who had originally denied using a gun to collect on his debt, told the officers that they could find a gun in the dresser. According to Officer Mou-liere, once they retrieved the handgun from a dresser drawer, defendant hung his head and stated, “Look, that guy owed me nine dollars. Well, he gave me nine dollars, and I know I wasn’t going to get paid, so I took his money.... I took my pistol, and I got my money.”
The victim, Keith Williams, who was at the time of trial confined in the parish prison on a parole violation for one of his three prior felony convictions, readily acknowledged that he had owed defendant for a haircut and had sought him out that afternoon to make good on his debt. However, Williams claimed that he had considerably more cash than $10 in his pocket, testifying that he had just received $300 in FEMA money when he approached defendant’s room in the hotel. “I went to pull the money out and pay him,” Williams *770 testified, “and he ... pulled a gun out and told me to get the hell on and don’t come back around there.” Williams testified that he left, but defendant “took my money.” Williams went back to his room, and told a friend what had happened. His friend then called the desk clerk who in turn called the police.
Defendant testified at trial that when the victim approached him on that afternoon outside of his room, Williams informed him he had $8.00 in his pocket and that he wanted to put $2.00 towards the haircut debt and to “get him anything for $6.00.” Defendant assumed Williams meant drugs and he told the victim to give him the cash. Defendant testified that he pocketed the $8.00 for the unpaid debt on the haircut but denied using a gun or making any threats to collect the money owed him. Defendant acknowledged that the signature on the consent form authorizing the |4 search of his hotel room appeared to be his, but he flatly denied signing the form and suggested that the officers had forged his signature by copying it from other documents scattered about the room because he was a freelance writer as well as a licensed barber. Defendant also denied any knowledge of the box of shells Officer Davis found in the barbeque pit, claiming he “didn’t see them,” and denied informing the officers that they could find a gun in the dresser, or that he knew anything about the firearm they retrieved from the dresser drawer. He also flatly denied telling the officers that he had used the gun to collect the victim’s money, claiming that the victim had lied about the robbery and loss of $300. “It wasn’t really a disagreement,” defendant maintained, “he just owed me for a haircut. It wasn’t no bad vibes or nothing pertaining to that.” On the other hand, defendant readily acknowledged that he had six prior felony convictions. “Old things come to pass,” he informed the court, “new things come to exist.”
At the close of the testimony, the trial court expressed its concern “that the victim in this case, his testimony, well, it leaves a lot to be desired.” In fact, the court frankly doubted “he’s had $300 in his life,” and found that much of the victim’s testimony simply “was not credible.”[2] On the other hand, the court did not believe | s“anything [defendant] said” in his “completely incredible” trial testimony, as opposed to statements he made on the scene to Officers Davis and Mouliere. In the court’s view, defendant spoke freely and credibly to the officers about resorting to self help in collecting on his debt “because he didn’t think anything was wrong with *771 that.” However, the court observed that, “there is no self-help in Louisiana. You cannot get a gun to collect a debt.” Because the officers appeared completely credible in their testimony with respect to defendant’s statements to them that he had used a gun to take some amount of money from the victim in satisfaction of the unpaid debt, and that the gun concealed in the dresser to which defendant directed the officers was the weapon used in the crime, the court found defendant guilty on both counts.
On appeal, the Third Circuit panel readily affirmed defendant’s conviction for possession of a firearm by a convicted felon. Jackson, 09-0045 at 6-7, 19 So.3d at 635 (“[Biased upon the fact that the gun was found in the hotel room, which the Defendant occupied, buttressed with the testimony of Officers Davis and Mouliere that the Defendant pointed out the location of the handgun and the handgun was found in that location, we conclude sufficient evidence was presented by the State to convict the Defendant of possession of a firearm by a convicted felon.”). As for the armed robbery conviction, the majority conceded that both defendant and Williams agreed that some amount of money changed hands on that afternoon, whether it was the $9.00 to which defendant referred in statements to the police officers on the scene, the $8.00 to which he referred in his testimony, or the $300 FEMA payment the victim claimed that he lost. Nevertheless, it was “unclear from the record the events that took place between the victim seeking and finding the Defendant to repay him and the Defendant obtaining possession of the money.” Jackson, 09-0045 at 9, 19 So.3d at 636-37. Given this uncertainty, the majority concluded that the state had | ^failed to prove that a taking accomplished by the use of force or intimidation occurred. Id. Dissenting, Judge Amy emphasized that Williams testified “that the defendant came to collect money ... while armed with a gun,” and that according to Officers Davis and Mouliere, “defendant admitted using a gun to collect the money.” The trial court “found this latter testimony regarding the reporting of the event credible,” and Judge Amy concluded that it was “inappropriate to reassess this evaluation on appeal.” Jackson, 09-0045 at 1, 19 So.3d at 639-40 (Amy, J., dissenting).
We agree with Judge Amy that the record provides no reason for intruding on the rational credibility determinations made by the trial judge. An appellate court may impinge on the fact finder’s discretion and its role in determining the credibility of witnesses “only to the extent necessary to guarantee the fundamental due process of law.” Jackson v. Virginia, 443 U.S. at 319, 99 S.Ct. at 2789. The due process, rational trier of fact standard announced in Jackson seeks to preserve “‘the factfinder’s role as weigher of the evidence’ ” by requiring an appellate court to review “ ‘all of the evidence ... in the light most favorable to the prosecution.’ ” McDaniel v. Brown, 558 U.S. -, -, 130 S.Ct. 665, 674, 175 L.Ed.2d 582 (2010)(quoting Jackson, 443 U.S. at 319, 99 S.Ct. at 2789). We have therefore repeatedly declined to “second-guess the credibility determinations of the trier of fact,” State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983), in determining, as Jackson requires, whether “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson, 443 U.S. at 319, 99 S.Ct. at 2789. To the extent that Jackson announced an objective standard for reviewing the sufficiency of the evidence from the perspective of a hypothetical rational, pro-prosecution trier of fact, jjthe decision “does not require scrutiny of the reasoning process actually used by the *772 factfinder — if known.” Jackson, 443 U.S. at 319, n. 13, 99 S.Ct. at 2789.
In the present case, the thought processes by which the court arrived at its decision are known, and the reasons articulated by the court for its verdict offer particularized assurances, if any are needed, that the court reached a verdict any rational trier of fact could render. The trial court rejected the testimony of defendant in its entirely, not simply on the basis of what his six prior felony convictions had to say about his generally credibility, but also because defendant’s explanation for how his signature came to be on the consent-to-search form, the result of a claimed forgery on the part of Officers Davis and Mouliere, appeared so implausible that it was not worthy of belief. Only slightly less tenuous was defendant’s claim that he knew nothing about the box of shells underneath the lid of his barbeque pit or the handgun in the dresser drawer.
On the other hand, the trial court accorded a full measure of credibility to the testimony of the officers with respect to defendant’s statements on the scene because the court rationally concluded that defendant spoke freely to the officers in the belief that he had done nothing wrong by taking his gun to collect on his unpaid debt. Defendant’s statements to the officers corroborated the victim’s testimony that he had used a gun to obtain some amount of money from Williams. Despite the court’s concerns about this aspect of the victim’s testimony, it did not matter whether defendant took merely a few dollars as the price of a haircut or $300 in FEMA money because the offense of armed robbery involves the “taking of anything of value belonging to another from the person of another.” La.R.S. 14:64(A) (emphasis added).
| sIt also did not matter that the dispute took place over a debt owed by the victim to defendant. Whatever defendant’s subjective beliefs, the trial court correctly observed that resort to armed self-help on a claim of right to payment of a debt offered no defense or justification to what defendant conceded to the officers had been a taking of the victim’s money by force of arms. Defendant made no claim that the money he took from his victim in satisfaction of the debt actually belonged to him. In the absence of any evidence that the accused sought to reclaim his own property, of. State v. Mejia, 141 N.J. 475, 662 A.2d 308, 318 (1995)(“[A] defendant charged with theft or robbery may present evidence proving that the property taken was the defendant’s and not the ‘property of another’ ”); State v. Authement, 21,737, 139 La. 1070, 72 So. 739, 740-41 (1916)(that a defendant’s taking of property under a bona fide claim of right is not larceny “is well settled law.”), the overwhelming weight of modern authority holds that a creditor who collects on a debt by the use of force commits the offense of robbery, which, in Louisiana, becomes an armed robbery when the offender using force or intimidation is “armed with a dangerous weapon.” La.R.S. 14:64(A); see, e.g., People v. Tufunga, 21 Cal.4th 935, 90 Cal.Rptr.2d 143, 987 P.2d 168, 178 (1999)(“As several courts have observed, the proposition that a claim of right negates the felonious intent in robbery not only is lacking in sound reason and logic, but it is utterly incompatible with and has no place in an ordered and orderly society such as ours, which eschews self-help through violence. Adoption of the proposition would be but one step short of accepting lawless reprisal as an appropriate means of redressing grievances, real or fancied.”)(internal quotation marks and citation omitted); State v. Mejia, 662 A.2d at 320 (“[T]he emerging trend in other jurisdictions rejects the claim-of-right de *773 fense to robbery because ... it encourages disputants to resolve disputes on the streets through violence instead of through the judicial system.”)(internal quotation marks |fland citations omitted); Crawford v. State, 509 S.W.2d 582, 584-86 (Tex.Crim.App.1974) (“To hold otherwise would be establishing a dangerous doctrine, since it would authorize the accused not only to decide his own injury or damage but to enforce the collection thereof by force and violence .... contrary to the policy of our form of government.”)(internal quotation marks and citation omitted).
In the present case, the trial court exercised its discretion as fact finder "to weigh the credibility of the witnesses and concluded rationally that defendant took something of value belonging to Keith Williams by force and intimidation while armed with a dangerous weapon, and did so without justification, thereby committing the crime of armed robbery in Louisiana. Accordingly, the decision of the court of appeal is affirmed to the extent that it upheld defendant’s conviction for possession of a firearm by a convicted felon, but is reversed to the extent that it vacated defendant’s conviction for armed robbery. Defendant’s conviction and sentence for armed robbery are reinstated and affirmed, and this case is remanded to the district court for purposes of execution of sentence.
CONVICTION AND SENTENCE FOR POSSESSION OF A FIREARM BY A CONVICTED FELON AFFIRMED; CONVICTION AND SENTENCE FOR ARMED ROBBERY REINSTATED AND AFFIRMED; CASE REMANDED.
JOHNSON, Justice, dissents and assigns reasons.
KNOLL, Justice, dissents and assigns reasons.

. Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.

. After his original sentencing but before his resentencing as an habitual offender more than two years later, defendant filed a pro se motion for a new trial on grounds of newly discovered evidence. He attached to the motion an affidavit executed by Kenneth Williams in which he claimed that defendant "never took any finances from me through threat,” that he had become angry at defendant because "he kept $8.00 that I had given him and I tried to press into his Motel Room,” that he owed defendant the money for a haircut, and that once he made the complaint against defendant, he "feared to stand up and say he did not take the money from me.” The affidavit further claimed that Williams is a diagnosed schizophrenic and that disease often made him do things that he later regretted.
The trial court denied the motion summarily on the day that defendant filed it and the Third Circuit affirmed that ruling on appeal after finding that the motion was untimely. Jackson, 09-0045 at 13, 19 So.3d at 639 ("In this case, the Defendant filed his motion for new trial based on newly discovered evidence more than one year after the verdict was rendered and more than one year after the underlying sentence was imposed.”). Defendant has not sought review of that aspect of the court of appeal’s decision in this Court.