CHARLES R. JONES, Judge.
| ¡The Appellant, C.J., appeals his adjudication as a delinquent for the offense of armed robbery, and his commitment to the Department of Public Safety and Corrections until his 21st birthday. Finding no error on the part of the juvenile court with regard to the adjudication of C.J. as a delinquent, we affirm his adjudication. However, having found inconsistencies in the record, we vacate the commitment of C.J. to the Department of Public Safety and Corrections until his 21st birthday, and remand this matter to the juvenile court to clarify its ruling, or conduct a new disposition hearing and resentence C.J., pursuant to La. Ch. C. Art. 897.1 B.
In October 2007, C.J. was charged by delinquency petition with violating one count of La. R.S. 14:64, relative to armed robbery, to which he entered a denial. Later, in October 2007, C.J. filed a motion to suppress identification. In November 2007, on the date of the adjudication hearing, the juvenile court denied the motion to suppress and adjudicated C.J. a delinquent for the offense of armed robbery. A predisposition investigation was ordered by the court and a disposition hearing was scheduled. The juvenile court committed C.J. to the |2Pepartment of Public Safety and Corrections until his twenty-first birthday at the disposition hearing. C.J. filed a motion to reconsider sentence, which was denied. C.J. timely sought an appeal.
In September of 2007, a young man on a bicycle approached the victim, Nicole Tim-mons, as she walked to her parked car holding her three-month-old baby, on Cambronne St. in Orleans Parish. The young man demanded her purse at gunpoint. After approximately a five minute conversation with the robber, Ms. Tim-mons complied and gave her money to the robber, who agreed to let her keep her identification. The robber rode away after taking Ms. Timmons’ money. Thereafter, Ms. Timmons called the police to report the incident.
Detective Jerry Baldwin of the Second District of the New Orleans Police Department was the senior investigator of the subject armed robbery. Det. Baldwin testified that he learned from Ms. Timmons that the robber was a six foot tall black male between the ages of fourteen to seventeen year old, who wore an orange striped Polo shirt with a large orange “polo man” on the shirt, and dark jeans. Det. Baldwin testified that he also learned from Ms. Timmons that her assailant had a Mohawk haircut.
|sDet. Baldwin took the description given by Ms. Timmons and subsequently canvassed the area, looking for the distinctive shirt which Ms. Timmons had described her assailant as wearing. During the canvass, Det. Baldwin was advised by other juveniles that C.J. had such a shirt, and Det. Baldwin eventually located C.J. at the home of his mother. When Det. Baldwin initially saw C.J., C.J. was wearing a striped Polo shirt with dark jeans, and had a Mohawk haircut.
Det. Baldwin testified that he brought C.J. to the restaurant where Ms. Timmons was waiting. According to his testimony, Det. Baldwin presented C.J. to Ms. Tim-mons for identification approximately forty-five minutes after the robbery. The police told Ms. Timmons that they had a *49 possible suspect in custody and displayed C.J. — -who was still wearing the orange sweatshirt — to Ms. Timmons, who identified C.J. as her assailant. Det. Baldwin further testified that Ms. Timmons was not forced to identify C.J., who was standing alone and unhandcuffed when he was identified.
Det. Baldwin testified that C.J. was standing on a well-lit corner when Ms. Timmons identified C.J. as her assailant. Ms. Timmons was approximately ten yards away from C.J. when she identified him. The time of her identification occurred about 90 minutes after she was robbed. Neither the gun used nor the money stolen was recovered from C.J. The bicycle used in the commission of the robbery was also not found.
C.J. raises three issues on appeal:
1. The juvenile court erred in failing to grant the motion to suppress the identification made by the victim of the armed robbery from a distance of thirty feet away. The identification procedure was suggestive and an analysis of the Manson v. Brathwaite, 482 U.S. 98, 97 S.Ct. 2248, 53 L.Ed.2d 140 (1977) factors makes the likelihood of misidentification great.
2. The evidence adduced against C.J. was insufficient to sustain a delinquency adjudication. The juvenile court was “clearly wrong” in finding sufficient evidence to sustain a finding that C.J. committed the armed robbery of Ms. Tim-mons.
3. The juvenile court based the disposition on a misconception as to mandated sentencing conditions. Considering the court’s apparent misapprehension as to the penalty, the disposition should be set aside and the case remanded for resen-tencing.
|40n appeal, review in juvenile delinquency proceedings extends to both the law and the facts. State in Interest of Batiste, 367 So.2d 784, 788 (La.1979). We grant great deference to the factual findings, credibility determinations and assessment of witness testimony of the juvenile court. State ex rel W.B., 08-1458, p. 1 (La.App. 4 Cir. 4/22/09), 11 So.3d 60, 61, writ denied, 09-1129 (La.1/22/10), 25 So.3d 139, (citing State ex rel J.N., 07-1229, p. 8 (La.App. 4 Cir. 5/7/08), 984 So.2d 910, 915).
The first issue raised by C.J. is that the juvenile court erred in failing to grant his motion to suppress the identification made by the victim of the armed robbery from a distance of thirty feet away. He argues that under the analysis of the holding of the U.S. Supreme Court in Manson, the identification procedure was suggestive and an analysis of the factors makes the likelihood of misidentification great.
To prevail on a motion to suppress challenging an out-of-court identification, a defendant has to establish that the identification procedure was suggestive and that there was a substantial likelihood of misidentification. State v. Broadway, 96-2659, p. 13 (La.10/19/99), 753 So.2d 801, 812, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000). An identification procedure is suggestive if the witness’ attention is unduly focused on the defendant during the procedure. Id. at p. 14, 753 So.2d at 812. In order to be suppressed, the identification must have indicia of unreliability. Nevertheless, “[e]ven if the identification procedure is found to be suggestive, this alone does not violate due process. Rather, it is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness.” State v. Raines, 500 — 1941, p. 4 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 639, writ denied, 01-1906 (La.5/10/02), 815 So.2d 833.
*50 The factors set forth in Manson are used to determine whether the suggestiveness of the procedure presents a substantial likelihood of misidentification under a totality of the circumstances. Broadway, 96-2659, p. 14, 753 So.2d at 812 The Manson factors are: the witness’ opportunity to view the criminal at the time of the crime; the witness’ degree of attention; the accuracy of the prior description of the criminal; the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Manson, 432 U.S. at 114, 97 S.Ct. at 2253.
Ms. Timmons testified that she was robbed across the street from a street light that shined down upon her assailant. She was not accosted in darkness. Furthermore, she testified that she spoke to the robber face-to-face for about five minutes to convince him to only take her money and not steal her identification. Additionally, forty-five minutes later, when C.J. was presented to her, he stood on a well-lit corner for identification. Ms. Tim-mons further testified that she did not feel forced or pressured to identify C.J. as the robber. She testified that she was upset about being robbed, but she retained her composure. She further testified that she saw the incident as unfortunate, but was no longer upset. Lastly, she testified that C.J. did not appear to be handcuffed when Det. Baldwin presented C.J. to her.
The defense maintains that the identification of C.J. was particularly suggestive considering that the police found another young man wearing a similar orange striped Polo shirt when Det. Baldwin initially went canvassing. | fiDet. Baldwin testified that when he initially began canvassing he located a young man wearing the shirt Ms. Timmons described. However, because Det. Baldwin believed the young man did not fit the description given by Ms. Timmons, the suspect was released and was not shown to Ms. Timmons. Det. Baldwin, testified that he decided not to present said suspect to Ms. Timmons because the suspect was out of the age range Ms. Timmons described, and the suspect did not have a Mohawk hairstyle. •
In consideration of the facts of the case sub judice under the Manson factors, there was little likelihood that — even if the identification of C.J. was suggestive — the identification procedure presented a substantial likelihood of misidentification. Ms. Timmons had a five minute face-to-face conversation with the robber wherein she negotiated with him- to keep her wallet. Her encounter occurred under the beam of a streetlight. Thus, she had a clear opportunity to view her assailant and her attention was focused under the circumstances. Furthermore, her description of the robber was accurate in that the appearance of C.J. when he was apprehended matched the description provided to Det. Baldwin, as C.J. wore the same clothes Ms. Timmons described, and had the same haircut described to Det. Baldwin. Lastly, less than two hours passed between the time that Ms. Timmons was robbed to the time that she identified C.J. as her assailant, and in her identification of C.J., she was certain. The identification procedure employed does not appear to be unduly suggestive where C.J. was presented unhandcuffed .and standing alone for identification. Additionally, the application of the Manson factors evidences 17that there was a slim chance of misidentification in this matter. This assignment of error does not have merit.
The second issue raised by C.J. is that the evidence adduced against him was insufficient to sustain a delinquency adjudication. C.J. argues that the juvenile court was “clearly wrong” in finding sufficient evidence to sustain a finding that C.J. *51 committed the armed robbery of Ms. Tim-mons. When reviewing the sufficiency of evidence to support a conviction, an appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. See State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)). “The elements of armed robbery are: (1) the taking, (2) of anything of value, (3) from a person or in the immediate control of another, (4) by the use of force or intimidation, (5) while armed with a dangerous weapon.” State v. Carter, 99-2234, p. 31 (La.App. 4 Cir. 1/24/01), 779 So.2d 125, 144, unit denied, 01-0903 (La.2/1/02), 808 So.2d 333 (citing State v. Banks, 96-652, 96-653, p. 12 (La.App. 4 Cir. 1/15/97), 694 So.2d 401, 410). “The testimony of an eyewitness that she observed all the elements of the offense, coupled with an identification of the defendant as the perpetrator, ordinarily is sufficient to support a conviction.” Id. Thus, considering the testimony of Ms. Timmons and her identification of C.J., we find that the evidence — viewed in the light more favorable to the prosecution — was sufficient to convince the juvenile court that all elements of the crime were proven beyond a reasonable doubt. This assignment of error is without merit.
| ¡¿Lastly, the third issue raised by C.J. is whether the juvenile court based its sentence on a misconception as to mandated sentencing conditions. C.J. argues that considering the apparent misapprehension of the juvenile court as to the penalty, the disposition should be set aside and the case remanded for resentencing.
The signed judgment of the juvenile court states:
The Court further finds that the juvenile is a proper person for commitment to the Department of Public Safety and Corrections. The juvenile is hereby committed to the Department of Public Safety and Corrections until his 21st birthday.
However, during the disposition hearing, when defense counsel urged the juvenile court to reconsider its sentence, the court explained that it could not change its disposition, and mentioned that another juvenile court judge could change the disposition.[1] C.J. argues that he should be resentenced because the juvenile court judge was not aware that by sentencing C.J. to juvenile life that the sentence could not be modified. C.J. cites excerpts from the trial transcript as proof of the confusion of the juvenile court.
We recognize that the sentence of juvenile life imposed by the juvenile court is in compliance with La. Ch. C. Art. 897.1 B, which states that juveniles adjudicated as delinquents for the offense of armed robbery are to be confined in secure placement for the length of the term imposed by the court at the disposition hearing without benefit of parole, probation, suspension of imposition or execution of sentence, or modification of sentence. However, the | (justification for imposing the sentence given by the juvenile court at the disposition hearing is confusing because the juvenile court alludes to the possibility of the sentence of C.J. being modified. Therefore, to assure that the juvenile court correctly understands the restrictions *52 placed upon a sentence of juvenile life, we vacate the commitment of C.J. to the Department of Public Safety and Corrections until his 21st birthday, and remand this matter to the juvenile court to clarify its ruling, or conduct a new disposition hearing and resentence of C.J., pursuant to La. Ch. C. Art. 897.1 B.
Lastly, pursuant to our review of the record, we find no errors patent.

DECREE

For the foregoing reasons, the judgment of the juvenile court adjudicating C.J. to be a delinquent for the offense of armed robbery is affirmed. However, we vacate his commitment to the Department of Public Safety and Corrections until his 21st birthday, and remand to the juvenile court for a new disposition consistent with this opinion.
AFFIRMED IN PART; VACATED AND REMANDED IN PART.
BONIN, J., concurs with reasons.

. Defense counsel represented to the juvenile court that C.J. was facing two four-year sentences, and an additional two-year sentence in Section F of juvenile court. Defense counsel further represented that "Section 'F' will continue to review whatever sentence” C.J. received in this matter.