62 So.3d 839 (2011)
STATE of Louisiana In the Interest of W.H.
No. 2010-CA-1418.
Court of Appeal of Louisiana, Fourth Circuit.
April 6, 2011.
*842 Pascale Belizaire Watson, Juvenile Regional Services, Inc., New Orleans, LA, for Appellant, W.H.
Leon A. Cannizzaro, Jr., District Attorney, Alyson Graugnard, Assistant District Attorney, New Orleans, LA, for State of Louisiana.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge DENNIS R. BAGNERIS, SR., Judge PAUL A. BONIN).
PAUL A. BONIN, Judge.
The juvenile judge adjudicated W.H., a child under seventeen years of age,[1] delinquent for violations of attempted unauthorized entry of a dwelling and of aggravated assault. At the disposition hearing, the juvenile judge committed W.H. to the custody of the Department of Public Safety and Corrections for these felony-grade delinquent acts.[2] W.H. appeals to us. See LA. CH.C. ARTS. 330 B and 337. W.H. assigns two errors: (1) that the evidence is insufficient to support a finding beyond a reasonable doubt that he committed the delinquent acts, and (2) that the juvenile judge erred in denying his pretrial motion to suppress an out-of-court identification.
Because we conclude from a review of the facts and the law that the juvenile judge was not clearly wrong in finding beyond a reasonable doubt that W.H. committed the delinquent acts, we determine that the evidence is sufficient for the adjudications. We also conclude that the juvenile court did not abuse its discretion in denying the motion to suppress the identification. Accordingly, we affirm the adjudication and disposition.[3] We explain our conclusions in detail in the following Parts.

I
In this Part we explain why we conclude that the juvenile-court judge was not clearly wrong in finding beyond a reasonable doubt that W.H. committed the delinquent acts of attempted unauthorized entry of a dwelling and aggravated assault. In a delinquency-adjudication proceeding, the state must prove all essential elements of the delinquent acts beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); LA. CH.C. ART. 883.
In Louisiana, the child is constitutionally entitled to appellate review of his adjudication under the manifestly erroneous-clearly wrong standard. See LA. CONST. ART. 5, § 5, 10, 18 and 19; see also State in the Interest of Batiste, 367 So.2d 784, 789 (La. 1979). This is a broader standard than the minimum standard mandated by the federal constitution and memorialized in Jackson v. Virginia, 443 U.S. 307, *843 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[4]See State in the Interest of D.R., 10-0405, pp. 12-13 (La.App. 4 Cir. 10/13/10), 50 So.3d 927, 934.
The manifest error-clearly wrong standard is well-known. Nolan v. Mabray, 10-373, pp. 9-10 (La.11/30/2010), 51 So.3d 665, 672. We do not disturb a fact-finder's findings if, after a review of the entire record, we conclude that the findings are reasonable and not clearly wrong. See Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Especially on matters of credibility, an appellate court affords great deference to a fact-finder's findings. Id. If, however, "documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face," we might well find manifest error despite a purported credibility determination by the fact-finder. Id. at 845.
In this case, we specially note at the outset that there are no documents or objective evidence. The judge as trier of fact accepted as credible the uncontroverted testimony of the only witnesses: the victim, Luis Ibanez, and an investigating officer, Tamara Woods. Thus, our review is principally directed to determining whether there is sufficient evidence as to each essential element of each of the delinquent acts charged and to determining whether testimony of the witnesses is internally inconsistent or implausible on its face.

A
We first review the charge of attempted unauthorized entry of an inhabited dwelling. "Unauthorized entry of an inhabited dwelling is the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person." LA. R.S. 14:62.3 A. "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward accomplishing his object is guilty of an attempt to commit the offense intended." LA. R.S. 14:27 A. And "it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose." Id. Additionally, "any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime attempted or intended was actually perpetrated by such person in pursuance of such attempt." LA. R.S. 14:27 C; see also LA. C.CR.P. ART. 814(43); see also State v. Little, 01-2218, p. 1 (La.3/28/02), 814 So.2d 547, 548.
The uncontroverted testimony of Mr. Ibanez was that he was at home on the evening of June 22, 2010 when W.H. knocked at his door. W.H. first asked permission to enter the home, which permission Mr. Ibanez refused. W.H. then began to insist on entering the home so that he could smoke marijuana. Mr. Ibanez continued to repeatedly refuse entry. *844 W.H. then threatened Mr. Ibañez that he would return and "do something" to Mr. Ibanez. W.H. left the home and returned with a gun, which Mr. Ibanez saw in W.H.'s pants.
On the porch of Mr. Ibanez's home, W.H. pointed the gun in Mr. Ibanez's face and demanded to be let into the home. At that point Mr. Ibanez yielded to W.H.'s demand and W.H. entered the home. Once inside the home W.H. was asked by Mr. Ibanez to at least give him the bullets for the gun. W.H. replied, "you're f___ crazy," and subsequently left Mr. Ibanez's home. At that point Mr. Ibanez telephoned the police.
Not long after, the police arrested W.H. around the corner from Mr. Ibanez's home and brought him to Mr. Ibanez, who identified him. He also identified W.H. as the perpetrator during the trial.
We discern no internal inconsistency or implausibility in Mr. Ibanez's testimony. We cannot find that the judge was clearly wrong in finding beyond a reasonable doubt that each element of attempted unauthorized entry of an inhabited dwelling had been proven. That finding is reasonable.

B
We now review the charge of aggravated assault. Assault is defined as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." LA. R.S. 14:36. One definition of a battery is "the intentional use of force or violence upon the person of another." LA. R.S. 14:33. "Aggravated assault is an assault committed with a dangerous weapon." LA. R.S. 14:37 A. On this charge too there was only the uncontroverted testimony of Mr. Ibanez, which the judge, as trier of fact, accepted as credible.
As we noted earlier, when leaving Mr. Ibañez's home the first time, W.H. said that he would come back to "do something" to Mr. Ibañez. Upon his return, W.H. put the gun in Mr. Ibanez's face and "put the clip back." When he was leaving the second time, W.H., according to Mr. Ibanez, said he wanted to come back and kill him. A reasonable inference for the juvenile-court judge to draw from W.H.'s actions was that W.H. intentionally placed Mr. Ibañez in reasonable apprehension that W.H. intended to use force or violence upon him.
The only point that W.H. raises is that there is no corroboration that a gun was used as none was found by the police or that what may have appeared to be a gun was a non-dangerous toy. Of course, recovery or production of the gun is not essential to a finding beyond a reasonable doubt that W.H. committed an assault with a dangerous weapon. See State v. McNeal, 785 So.2d 957, 970 (2001). What is essential is that a dangerous weapon was used and a "dangerous weapon" includes any "instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." LA. R.S. 14:2 A(3). As a matter of law, a gun, or firearm, is a dangerous weapon. See State v. Bonier, 367 So.2d 824 (La.1979).
The defense raises the issue that the gun used could be either a toy or an inoperable gun. "The use of an inherently harmless object in a manner that creates circumstances likely to produce death or great bodily harm results in the inherently harmless object being a dangerous weapon within the provisions of LA. R.S. 14:2(3) and 14:64." State v. Levi, 259 La. 591, 250 So.2d 751, 754 (La.1971). In order to find that a toy pistol is a dangerous weapon within the provisions of La. R.S. 14:2(3) and 14:64, the trier of fact must consider the manner in which the defendant used *845 the toy pistol and the effect this use had upon the victim. See Louisiana v. Green, 409 So.2d 563, 565 (La.1982). When considering the first prong, the manner of use, of this two-prong test, the court must decide if "the interaction between the offender and the victim created a highly charged atmosphere." State v. Kemp, 39, 358, p. 9 (La.App. 2 Cir. 3/11/05), 896 So.2d 349, 357. When considering the second prong, the effect of use, the court must decide if there was a danger of serious bodily harm resulting from the victim's fear for his life. Id.
W.H. argues that a gun was never recovered by the police, and it is therefore possible that it was a toy or inoperable gun so as to be incapable of causing death or great bodily harm, without which he could not be adjudicated delinquent of the charge of aggravated assault. This contention is without merit. The record reflects that W.H. twice pointed the pistol in Mr. Ibanez's face, and Mr. Ibanez testified that he believed that he was going to be shot. Additionally, contrary to W.H.'s suggestion that the gun could have been a toy, we note that the record contains testimony that he "put the clip back" on the weapon. Therefore, the facts support our conclusion that even if this was a toy or inoperable gun, the manner in which it was used and the effect that it had on Mr. Ibanez was enough to classify it as a dangerous weapon within the language of La. R.S. 14:2(3) and 14:64.

II
In this Part we address the juvenile-court judge's ruling on the motion to suppress an out-of-court identification of W.H. by Mr. Ibanez.
To prevail on a motion to suppress challenging an out-of-court identification, a defendant has to establish that the identification procedure was suggestive and that there was a substantial likelihood of misidentification. State v. Broadway, 96-2659, p. 13 (La.10/19/99), 753 So.2d 801, 812. In this case, the investigating officers elected to conduct what is known as a one-on-one show up identification. An identification procedure is unduly suggestive if it focuses attention on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La.1980). Although show up identification procedures are not generally favored in the law, they are nonetheless permissible when justified by the circumstances. State v. Woodberry, 95-2402, p. 5 (La.App. 4 Cir. 12/27/96), 686 So.2d 984, 988. However, even a suggestive, out-of-court identification is admissible so long as it is reliable under the totality of the circumstances. State v. Guy, 95-0899, pp. 9-10 (La.App. 4 Cir. 1/31/96), 669 So.2d 517, 523. The identification must have some indicia of unreliability to support suppression. "Even if the identification procedure is found to be suggestive, this alone does not violate due process. Rather, it is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness." State v. Raines, 00-1941, p. 4 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 639.
The factors set forth in the United States Supreme Court case, Manson v. Braithewaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), are used to determine whether a suggestive procedure presents a substantial likelihood of misidentification under the totality of the circumstances. Broadway, 96-2659, p. 14, 753 So.2d at 812. These factors include: the witness' opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Manson, 432 U.S. at *846 114, 97 S.Ct. 2243. In addition to adult criminal matters, this analysis is likewise applicable to juvenile delinquency adjudications. See State in the Interest of C.J., 10-1350, p. 2 (La.App. 4 Cir. 2/9/11), 60 So.3d 46, 2011 WL 565629.
The juvenile-court judge here did not err in denying W.H.'s motion to suppress identification. First, the evidence suggests that W.H. was known to the victim. In fact, this evidence formed the basis of the judge's ruling in denying W.H.'s motion to suppress identification. In denying the motion, the judge stated that the ruling was "[b]ased on the testimony presented today, given the totality of the circumstances, which indicates from the testimony of the victim that he did, in fact, know or had prior knowledge of or was familiar with the defendant." Also, during the incident in question, the altercation between the victim and W.H. was prolongedW.H. left the victim's home after the first encounter and returned a second time, forcing himself inside to continue the argument.
W.H. attempts to establish that the identification was unreliable because his clothing at the time of the identification did not match the description given by Mr. Ibanez. W.H. also suggests that the identification was mistaken because Mr. Ibanez did not readily admit that he failed to immediately identify W.H. as his attacker. Mr. Ibanez testified that he first told officers that W.H. was not the perpetrator. However, at the adjudication hearing, Mr. Ibanez explained that he did not immediately identify W.H. as the perpetrator because he was close to the police cruiser in which W.H. was seated, the window of the cruiser was down, and he was scared. Nonetheless, these inconsistencies fail to demonstrate sufficient indicia of unreliability to outweigh the fact that Mr. Ibanez and W.H. were familiar with one another. W.H. has not otherwise pointed to any countervailing evidence to suggest that Mr. Ibanez was mistaken or that his identification, even if it was suggestive, was unreliable.
A trial court's determination of the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Offray, 00-0959, p. 5 (La.App. 4 Cir. 9/26/01), 797 So.2d 764, 769. The juvenile-court judge's decision to admit the identification evidence in this case was reasonable and not an abuse of discretion.

CONCLUSION
Accordingly, we find that there was sufficient evidence to support W.H.'s delinquency adjudication for the offense of attempted unauthorized entry into an inhabited dwelling. Notwithstanding W.H.'s suggestion that the pistol used during commission of the offense may have been a toy gun, we find that the evidence was sufficient to support W.H.'s delinquency adjudication for the offense of aggravated assault. Finally, we find no abuse of discretion by the court below in finding that Mr. Ibanez's identification of W.H. was admissible. W.H.'s disposition and adjudications of delinquency are affirmed.

DECREE
We affirm W.H.'s adjudications for the offenses of attempted unauthorized entry into an inhabited dwelling and aggravated assault.
AFFIRMED.
NOTES
[1] See LA. CH.C. ART. 804(1).
[2] See LA. CH.C. ARTS. 804(5) and 897 D. Execution of the commitment was suspended and the child was placed on active probation. See LA. CH.C. ARTS. 897 A(3) and 901 D. The juvenile court denied the Office of Juvenile Justice's request that disposition be deferred. See LA. CH.C. ART. 896.
[3] We have also conducted a review for errors patent and have not identified any. See LA. CH.C. ART. 803 and LA.C.CR.P. ART. 920(2).
[4] The Jackson sufficiency-of-evidence standard is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt" Jackson, 443 U.S. at 307, 319, 99 S.Ct. 2781 (1979). This standard tests the evidence against a hypothetical rational trier of fact and all evidence, whether admissible or not, is considered. See State v. Jackson, 09-2406 (La.1/19/11), 55 So.3d 767, 771 ("To the extent that Jackson announced an objective standard for reviewing the sufficiency of the evidence from the perspective of a hypothetical rational, pro-prosecution trier of fact, the decision `does not require scrutiny of the reasoning process actually used by the factfinderif known,'" (quoting Jackson, 443 U.S. at 319, n. 13, 99 S.Ct. 2781)). We note that because of our disposition of W.H.'s second assignment of error, we need not address whether inadmissible evidence must be considered in a sufficiency-of-evidence review under the manifestly erroneous standard.